IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| DOMINIQUE HILL,<br><br>    Pro Se Plaintiff,<br><br>v.<br><br>Prisma Health, a nonprofit corporation f/k/a SC Health Company,<br><br>    Defendant,<br><br>REVMD PARTNERS LLC, a limited liability company,<br><br>    Third Party Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF:**<br><br>1) **HEALTH INSURANCE PORTABILITY AND ACCOUNTING ACT; AND**<br>2) **THE FAIR DEBT COLLECTION PRACTICES ACT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Dominique Hill "("Plaintiff" or "Plaintiff Hill") by and through her natural person brings this action seeking damages against Defendant Prisma Health ("Prisma" or "Defendant"); and Third Party Defendant REVMD PARTNERS LLC ("Rev" or "Third Party Defendant"). In support thereof, Plaintiff Hill states as follows:

## PARTIES

1. Plaintiff Hill is a citizen of Columbia, South Carolina.

2. Upon information and belief Prisma is a nonprofit corporation organized and existing under the laws of South Carolina with its principal place of business located in 300 E. McBee STE 500, Greenville, South Carolina 29601.

3. Rev is an Illinois limited liability company with its principal place of business located in 111 Pasquinelli Dr Ste 400, Westmont, IL, 60559.

4. Rev is a "debt collector" as defined in Section 803(b) of the Fair Debt Collection Act (the "FDCPA"), 15 U.S.C. § 1692a(6), and is a non-affiliate third party as defined in § 6802(b)(B) of the GLB Act.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Plaintiff assert claims that necessarily raise substantial disputed federal issues under the Health

Insurance Portability and Accountability Act of 1996 ("HIPAA"), and the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 45(a).

6. Prisma has sufficient minimum contacts in the State of South Carolina, as it is a domestic, nonprofit corporation organized under the laws of the State of South Carolina and conducts the majority (if not all) of its business in this District and throughout the United States, thus rendering the exercise of personal jurisdiction by this Court proper and necessary.

7. Rev is a non-affiliate third party of Prisma and it also has sufficient minimum contacts in the State of South Carolina, as it is a foreign limited liability company, and conducts business in this District and throughout the United States, thus rendering the exercise of personal jurisdiction by this Court proper and necessary.

8. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to these claims occurred in this District.

## DEFINITIONS

9. HIPAA breach is defined in HIPAA section 164.402—Improper Disclosures, is the acquisition, access, use, or disclosure of protected health information in a manner not permitted which compromises the security or privacy of the protected health information.

10. The term "consumer," as used in this Complaint means any natural person obligated or allegedly obligated to pay any debt, as "debt" is defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5).

11. Accordingly to HIPAA, the term disclosure refers to the release, transfer, or provision of protected health information, i.e., a doctor's office would be the entity holding a patient's private information, and anyone else who requests to see that information (such as a health insurance carrier) would be an outside entity.

12. HIPAA's Privacy Rule effective compliance date of April 14, 2003 defines PHI as follows, in relevant part: *"...any information held by a covered entity concerns health status, the provision of health status, the provision of healthcare, or payment for healthcare that can be linked to and individual."*

13. HIPAA defines electronic protected health information as e-PHI for PHI that is created, stored, transmitted, or received electronically. Furthermore, its Security Rule focuses on electronic health information; its Privacy Rule protects health information in any format, whether it's paper information or electronic information.

14. According to the Federal and State laws, an encounter is defined as any patient visit with a physician or other qualified health care provider (such as a nurse practitioner, therapist, or physician assistant) to diagnose a condition or treat an illness or injury. To document a patient encounter, the provider must include the following information, at a minimum:

   a. The patient's name;
   b. The date of the encounter;
   c. The reason for the encounter;
   d. A documented medical history and physical examination;
   e. A review of laboratory and diagnostic tests if performed drugs;
   f. A diagnosis;
   g. A plan of care or notes that identified the procedures and treatment given; and
   h. The signature of the provider who saw the patient.

## SECTION FIVE OF THE FTC ACT

15. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58.

16. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Misrepresentations or deceptive omissions of material tact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COMMERCE

17. At all times material to this Complaint, Rev have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## NATURE OF THIS ACTION

18. Plaintiff Hill states her protected health and personal identifiable information has been unlawfully disclosed by Prisma and accessed by a non-affiliate third party *i.e.*, Rev and thus the reason for this Complaint against both Prisma and Rev.

19. The Health Insurance Portability and Affordability Act ("HIPAA") prohibits any retaliation against individuals such as Plaintiff Hill who files a civil complaint.

20. HIPAA (i) passed in 1996, (ii) guards the privacy and security of protected health information ("PHI") and electronic protected information, and (iii) ensures disclosure of PHI only in appropriate circumstances.

21. HIPAA considers among all others (a) diagnoses, (b) treatment information, (c) medical test results, (d) prescription information, and (e) mental health issues as PHI.

22. The *Administrative Simplification* provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA, Title II) required the Secretary of HHS to publish national standards for the security of electronic protected health information e-PHI, electronic exchange, and the privacy and security of health information.

23. HIPAA defines Proper PHI Disclosure as receiving the individual's expressed written authorization to disclose protected health information as stated above.

24. HIPAA also considers national identification numbers and demographic information such as (a) birth dates, (b) gender, (c) ethnicity, (d) contact and (e) emergency contact information as PHI, and (f) medical record numbers.

25. Without expressed written authorization such as disclosure of Plaintiff Hill's protected health information stated above violates HIPAA's Privacy Rules and warrants a severe penalty and may even be determined to be a criminal act.

26. In the ordinary course of receiving treatment and health care services from Prisma, patients such as Plaintiff Hill are required to provide Prisma with sensitive, personal and private information such as follows:

    a. Name, address, phone number and email address;
    b. Date of birth;
    c. Demographic information;
    d. Social Security number;
    e. Driver's license or identification card numbers;
    f. Information relating to individual medical history;
    g. Insurance information and coverage;
    h. Information concerning an individual's doctor, nurse or other medical providers;
    i. Photo identification;
    j. Employer information; and
    k. Other information that may be deemed necessary to provide care.

HIPAA defines the above listed items a through k as PHI and PII.

27. The HIPAA privacy standards include guidelines for electronic medical records. The information in a medical record is the documentation that relates to a (a) patient's illness, (b) course of treatment, and (c) care.

28. According to HIPAA, medical records are considered to be legal documents, and they may be very important documentation in court cases i.e., if a physician or a hospital is sued by a patient.

29. According to Federal and State laws, health care professionals are required to include specific information in a patient's medical record to document every encounter with the patient.

1. HIPAA—Security Rule, addresses the creation, receipt, maintenance, and transmission of electronic PHI by covered entities and business associates. Furthermore, it describes the administrative, physical, and technical safeguards that are needed to keep protected health information safe, and prevent unintended disclosures.

2. According to the HIPAA—Security Rule, covered entities must have security which includes *administrative standards* in place to protect PHI that's stored or transmitted in electronic form (that is, on computer systems) from improper usage and disclosure.

3. Prisma also gathers certain medical information about patients and creates records of the care it provides individuals such as Plaintiff Hill.

4. Prisma receive private and personal information from other individuals and or organizations that are part of a patient's "care team", such as referring physicians, patients' other doctors, patient's health plan(s), close friends, and or family members.

5. Prisma's employees, staff, entities, clinics, sites, and locations my share patient information with each other for various purposes, as disclosed in the HIPAA Notice of Privacy Practices (the "Privacy Notice").

6. Plaintiff Hill's private and confidential information which was entrusted in Prisma improperly disclosed her protect health information to Rev.

7. Plaintiff Hill did not provide expressed written consent to Prisma to share her private and confidential health information with a non-affiliated third party such as Rev.

8. Furthermore, if Prisma claims to have such said authorization to release such stated authorization stated above, Plaintiff Hill declares she unknowingly participated while under unsurmountable pain or distress at all times during dates of service listed on Plaintiff Hill's *Transaction Total By Date Report*; Plaintiff also

states she would not have authorized Prisma to share her private and confidential information stated above, even if such above listed pain level existed at a bare minimum during her office visits.

9. Prisma's recently updated Notice of Privacy Practices states on their website the following, in relevant part:

> **The law requires Prisma Health to do the following:**
> - Maintain the privacy of your health information

10. Business Associates that create, receive, maintain, or transmit protected health information on behalf of covered entities to carry out healthcare activities and functions:
    a. Provide written (contractual) assurance they will comply with HIPAA requirements in a Business Associate Agreement;
    b. Comply with all HIPAA regulations requiring safeguards for the security of PHI; and
    c. Comply with certain HIPAA regulations pertaining to the privacy of the information.

11. Sub-Contracted Business Associates:
    a. Are contractually obligated to comply with HIPAA requirements;
    b. Are subject to HIPAA requirements separate and apart from their contractual agreements with Business Associates; and
    c. Technology vendors that create, receive, maintain, or transmit PHI are also legally bound to comply with HIPAA requirements.

12. HIPAA's Security Rule is implemented to: (a) maintain the confidentiality of stored and transmitted electronic PHI, (b) protect electronic PHI from unauthorized creation, modification, and deletion, and (c) ensure that electronic PHI is available to authorized individuals or entities when needed.

13. Plaintiff Hill bring this action against Prisma for its unlawful conduct, and asserting claims for: (i) negligence, (ii) negligence per se, (iii) breach of expressed contract, (iv) breach of implied contract, (v) breach of fiduciary duty, and (vi) wrongful intrusion into privacy affairs/invasion of privacy.

14. Plaintiff Hill bring this action against Rev for its unlawful conduct, and asserting claims for: (i) negligence.

15. As a result of Prisma's conduct, Plaintiff Hill is forced to live with the knowledge that her Private Information—which contains the most intimate details about a person's life were improperly disclosed, thereby subjecting her to embarrassment and depriving Plaintiff Hill of her right to privacy.

16. As a direct and proximate result of Prisma and Rev's actions and inactions, Plaintiff Hill have suffered aggravated anxiety; emotional distress, embarrassment, humiliation and loss of privacy.

### FACTUAL AND GENERAL ALLEGATIONS

17. That there are at least two contractual arrangements that must be in place before any prospective patient is able to use a particular hospital or other Healthcare Provider as an in network, healthcare employment benefit:

    - A Network Vendor must agree to include the hospital or other Healthcare Provider in its Health Plan Provider Network at pricing levels established through contract negotiations between the hospital or other Healthcare Provider and the Network Vendor; and

    - The patient's Employer or Healthcare Benefits Trust must contract for access by its Health Plan Enrollees to the Network Vendor's previously assembled Provider Network.

18. Thereafter, as medical needs arise, Health Plan Enrollees must select the hospital or other Healthcare Provider from which they want to obtain the needed healthcare services.

19. That a Hospital System is created when "two or more hospitals are owned, leased, or contract managed by a central organization." A hospital system can include affiliations with physician groups and other facilities.

20. That Prisma formed by merging of Palmetto Health and the Greenville Heath System in November 2017.

21. That according to Prisma Health current report on its website classifies itself as follows, in relevant part:

    *"...the largest not-for-profit health organization in South Carolina, serving more than 1.2 million patients annually."*

    *"...is South Carolina's largest private non-profit healthcare system."*

22. That according to Prisma's current report on its website as of Fiscal year 2021, ending September 30, 2021 they accumulated 5.3 billion operating revenue.

23. That Rev is a company that works in various businesses to provide (but not limited to) collection services including recovery of debt.

24. That between the months of January and April 2021, Plaintiff Hill contacted Rev in writing to express how shocked she was (and still is) to find out they've made negative entries on her credit report(s) without proper notice, and furthermore requested debt validation of the alleged debt.

25. That Plaintiff received a response letter from Rev (stating they are attempting to collect a debt) dated June 8, 2021 [see Exhibit A to be presented at trial].

26. That Rev also stated in such letter above mentioned their client Prisma is the creditor of such said negative entries Rev reported on her credit profiles(s) [see Exhibit A to be presented at trial].

27. That the above stated response letter reference number is 20394110 and also lists a total twelve account numbers [see Exhibit A to be presented at trial].

28. That enclosed with the above said response letter was a *Transaction Total by Date Report* which lists eleven transactions with details (but not limited to) as follows [see Exhibit B to be presented at trial]:

    a. Charges;

    b. Procedure;

    c. Diagnosis and Service Provider;

    d. Service dates and Total Amounts;

29. That the above stated response letter lists three healthcare professionals—in which above listed a through d are assigned to each these individuals who treated Plaintiff Hill and also who were practicing under Greenville Health Systems ("GHS") until the successful merger amongst Prisma Health, GHS and Palmetto Health to [see Exhibit C at trial].

30. That two of the healthcare professionals who treated Plaintiff Hill are practicing under Prisma [see Exhibit D to be presented at trial].

31. That the third healthcare professional who treated Plaintiff Hill no longer practiced under GHS before the above stated merger [see Exhibit E to be presented at trial].

32. That Prisma electronically transmitted Plaintiff Hill's *Transaction Total by Date Report* (two pages in length) time stamped June 8, 2021 at 9:35 AM and 9:35:18 AM which contains a through d above listed [see Exhibit B to be presented at trial].

33. That Rev also enclosed with the aforementioned response letter Plaintiff Hill's *Permission To Treat* documents (3 pages in length) [see Exhibit F to be presented at trial].

34. That Prisma also electronically transmitted Plaintiff Hill's documents above mentioned to a non-affiliated third party i.e., Rev.

## COUNT I (NEGLIGENCE)

35. Plaintiff Hill incorporates by reference the factual and general allegations contained in the preceding paragraphs of this Complaint.

36. Prisma owed a duty to Plaintiff to exercise reasonable care in obtaining, retaining, and safeguarding patients such as Plaintiff Hill's PHI and PII. Instead, Prisma's negligent hiring of untrained individuals and or supervision hereby failed to ensure compliance with HIPAA security including administrative standard rules by its workforces in violation of 45 C.F.R. § 164.306(a)(4).

37. Prisma breached its duties owed to Plaintiff Hill, and thus was negligent by failing to use reasonable measures to protect her confidential private information.

38. Prisma breached its duties by (a) improperly disclosing Plaintiff PHI and PII to a third party non-affiliate such as Rev. Prisma failed to implement the following security safeguards: (a) access controls limiting access to Plaintiff's PHI on a need-to-know basis determined by job role and context, (b) person or entity authentication to ensure only authorized access to Plaintiff's PHI, and (c) transmission security to PHI during transmission over electronic works.

39. Prisma knew or should have known that the major purpose of HIPAA's Privacy Rule is to define and limit the circumstances in which an individual's such as Plaintiff Hill's protected heath information may be used or disclosed by covered entities.

40. Prisma knew or should have known that HIPAA's Required Disclosures states the following, in relevant part:

> "A covered entity must disclose protected health information in only two situations: (a) to individuals (or their personal representatives) specifically when they request access to, or an accounting of disclosures of, their protected health information; and (b) to HHS when it is undertaking a compliance investigation or review or enforcement action."

41. It was foreseeable that Prisma's failure to use reasonable measures to protect Plaintiff Hill's confidential and private information would result in harming to her. It was foreseeable that the failure to adequately safeguard Plaintiff Hill's confidential and private information would result in one or more types of injuries to detailed herein.

42. As a result of Prisma's willful conduct, Plaintiff Hill is forced to live with the knowledge that her Private Information—which contains the most intimate details about a person's life were improperly disclosed, thereby subjecting her to embarrassment and depriving Plaintiff Hill of her right to privacy.

43. As a direct and proximate result of Prisma's actions and inactions, Plaintiff Hill have suffered aggravated anxiety; emotional distress, embarrassment, humiliation and loss of privacy.

## COUNT II (NEGLIENCE PER SE)

44. Plaintiff Hill incorporates by reference the factual and general allegations contained in the preceding paragraphs of this Complaint.

45. Accordingly to HIPAA, the *minimum necessary standard* is a component of the HIPAA that attempts to limit the disclosure of protected health information. The standard requires (a) hospitals, (b) insurance plans, (c) health care providers, and (d) other organizations to make as much effort as possible to limit the disclosure of PHI to the "minimum necessary" amount that needed for individual employees to do their jobs; i.e., in a health clinic and or a health organization such as Prisma, the information in a patient's electronic medical record would be disclosed only to the doctor providing services and the office employee who's recording and billing the services.

46. HIPAA states on their website the following, in relevant part:

> *"The Privacy Rule protects all "individually identifiable health information" held or transmitted by a covered entity or its business associate, in any form or media, whether electronic, paper, or oral. The Privacy Rule calls this information "protected health information (PHI). Individually identifiable health information" is information, including demographic data, that relates to: (i) the individual's past, present or future physical or mental health or condition, (ii) the provision of health care to the individual, or (iii) the past, present, or future payment for the provision of health care to the individual and that identifies the individual or for which there is a reasonable basis to believe can be used to identify the individual.13 Individually identifiable health information includes many common identifiers (e.g., name, address, birth date, Social Security Number)".*

47. Prisma knew or should have known that the major purpose of HIPAA's Privacy Rule major purpose is to define and limit the circumstances in which an individual's such as Plaintiff Hill's protected heath information may be used or disclosed by covered entities.

48. Prisma knew or should have known that HIPAA's Required Disclosures states the following, in relevant part:

> *"A covered entity must disclose protected health information in only two situations: (a) to individuals (or their personal representatives) specifically when they request access to, or an accounting of disclosures of, their protected health information; and (b) to HHS when it is undertaking a compliance investigation or review or enforcement action."*

49. Operating as a health organization, Prisma is undoubtedly aware that their organization is required to comply with HIPAA's federal privacy and security law.

50. At all times material to this Complaint, Prisma disclosed, without Plaintiff Hill's written expressed consent her private and confidential information to a non-affiliated third party, i.e., Rev.
51. Prisma (a) failed to adequately protect its patient's such as Plaintiff Hill's sensitive personal and financial data; (b) failed to ensure compliance with HIPAA and its Privacy Notice, as well as its contractual obligations and accompanying rules and regulations.
52. Prisma's malicious conduct violated such stated regulations set forth above, constitutes negligence *per se*.
53. As a result of Prisma's reckless conduct, Plaintiff Hill is forced to live with the knowledge that her Private Information—which contains the most intimate details about a person's life were improperly disclosed, thereby subjecting her to embarrassment and depriving Plaintiff Hill of her right to privacy.

## COUNT III (BREACH OF EXPRESSED CONTRACT)

54. Plaintiff Hill incorporates by reference the factual and general allegations contained in the preceding paragraphs of this Complaint.
55. Plaintiff Hill allege that she entered into valid and enforceable express contracts, or were third party beneficiaries of valid and enforceable express contracts, with Prisma.
56. The valid and enforceable express contracts that Plaintiff Hill entered into with Prisma include Prisma's promise to protect nonpublic personal information given to Prisma or that Prisma gathers on its own from disclosure.
57. Under these express contracts, Prisma and or its affiliated healthcare providers, promised and were obligated to: (a) provide healthcare to Plaintiff Hill; and (b) protect Plaintiff Hill's PII and PHI provided to obtain such healthcare; and or (ii) created as a result of providing such healthcare. In exchange, Plaintiff Hill agreed to pay money for these services.
58. Both the provision of healthcare and the protection of Plaintiff Hill's PII and PHI were material aspects of these contracts.
59. At all relevant times, Prisma expressly represented in its HIPAA Notice of Privacy Practices that it is required by law to: 1) "make sure that medical information that identifies you is kept private;" (2) "give you this notice of our legal duties and privacy practices with respect to medical information about you;" (3) "follow the terms of the notice that is currently in effect;" (4) "notify you of certain breaches of your

personal health information," and; (5) only make "other uses or disclosures of medical information not covered by this notice or the laws that apply to us . . . with your written permission."

60. Prisma's express representations, including, but not limited to, express representations found in its HIPAA Notice of Privacy Practices, formed an express contract requiring Prisma to implement data security adequate to safeguard and protect the privacy of Plaintiff Hill's PII and PHI.

61. Consumers of healthcare value their privacy, the privacy of their dependents, and the ability to keep their PII and PHI associated with obtaining healthcare private. To customers such as Plaintiff Hill, healthcare that does not adhere to industry standard data security protocols to protect PII and PHI is fundamentally less useful and less valuable than healthcare that adheres to industry-standard data security.

62. Plaintiff Hill would not have entered into these contracts with Prisma and or its affiliated healthcare providers as a direct or third party beneficiary without an understanding that their PII and PHI would be safeguarded and protected.

63. A meeting of the minds occurred, as Plaintiff Hill provided her PII and PHI to Prisma and or its affiliated healthcare providers, and paid for the provided healthcare in exchange for, amongst other things, protection of her PII and PHI.

64. Plaintiff Hill performed her obligations under the contract, including when she paid for her health care services.

65. Prisma materially breached its contractual obligation to protect the nonpublic personal information it gathered when the information was electronically transmitted to a non-affiliate third party i.e., Rev.

66. Prisma materially breached the terms of these express contracts, including, but not limited to, the terms stated in the relevant Notice of Privacy Practices. Prisma did not "maintain the privacy" of Plaintiff Hill's PII and PHI as evidenced by Exhibits A, B and F to be presented at trial. Prisma did not comply with industry standards, or otherwise protect Plaintiff Hill's PII and PHI, as set forth above.

67. Prisma's failure to ensure the confidentiality and integrity of electronic protected health information created, received, maintained, and transmitted constitutes violation of 45 C.F.R. § 164.306(a)(1).

68. Plaintiff Hill did not receive the full benefit of the bargain, and instead received healthcare and other services that were of a diminished value to that described in the contracts. Plaintiff Hill therefore was

damaged in an amount at least equal to the difference in the value of the healthcare with data security protection they paid for and the healthcare they received.

69. Had Prisma disclosed that its policies and procedures governing the use and disclosure of Plaintiff Hill's PHI and PII was inadequate or that it did not adhere to industry standard security measures, Plaintiff Hill, or any reasonable person would not have accepted or purchased healthcare from Prisma and or their affiliated healthcare providers.

70. As a result of Prisma's failure to fulfill the data security protections promised in these contracts, Plaintiff Hill have been harmed and have suffered, and will continue to suffer, damages and injuries, including without limitation the release, disclosure, and publication of her PII and PHI, the loss of control of her PII and PHI, the imminent risk of suffering additional damages in the future, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Prisma.

71. Plaintiff Hill is entitled to general compensatory, consequential and punitive damages suffered as a result of the improper disclosure of her PHI and PII.

## COUNT IV (BREACH OF IMPLIED CONTRACT)

72. Plaintiff Hill incorporates by reference the factual and general allegations contained in the preceding paragraphs of this Complaint.

73. When Plaintiff Hill provided her Private Information to Prisma in exchange for Prisma's services, she entered into implied contracts with Prima pursuant to which Prisma agreed to reasonably protect such information.

74. Prisma solicited and invited Plaintiff Hill to provide her Private Information as part of Prisma's regular business practices. Plaintiff Hill accepted Prisma's offers and provided their Private Information to Prisma.

75. In entering into such implied contracts, Plaintiff Hill reasonably believed and expected that Prisma's data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

76. Plaintiff Hill accepted healthcare from, and paid money to Prisma reasonably believed and expected that Prisma would use part of those funds to maintain adequate security measures of her PHI and PII. Prisma failed to do so.

77. Plaintiff Hill would not have entrusted her Private Information to Prisma in the absence of the implied contract between she and Prisma to keep her information reasonably secure. Plaintiff Hill would not have entrusted her Private Information to Prisma in the absence of their implied promise to monitor its employees to ensure that it adopted reasonable data security measures.

78. Plaintiff Hill fully and adequately performed her obligations under the implied contracts with Prisma.

79. Prisma breached their implied contract with Plaintiff Hill by failing to safeguard and protect her Private Information.

80. As a direct and proximate result of Prisma's breaches of the implied contracts, Plaintiff Hill sustained damages as alleged herein.

81. Plaintiff Hill entitled to general compensatory, consequential and punitive damages as a result of the improper disclosure.

## COUNT V (BREACH OF FIDUCIARY DUTY)

82. Plaintiff Hill incorporates by reference the factual and general allegations contained in the preceding paragraphs of this Complaint.

83. In light of the special relationship between Prisma and Plaintiff Hill, whereby Prima became entrusted with, and the guardian of Plaintiff Hill's Private Information.

84. Prisma became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for the benefit of its patients, including Plaintiff Hill for the safeguarding of her Private Information.

85. Prisma has a fiduciary duty to act for the benefit of Plaintiff Hill upon matters within the scope of its patients' relationship, in particular, to keep secure the Private Information of its patients.

86. Prisma breached its fiduciary duties owed to Plaintiff by failing to ensure the confidentiality and integrity of electronic PHI Prisma created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1).

87. Prisma breached its fiduciary duties owed to Plaintiff by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3).

88. Prisma breached its fiduciary duties owed to Plaintiff Hill by failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(94).

89. Prisma's breached its fiduciary duties owed to Plaintiff Hill by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502, et seq.

90. Prisma breached its fiduciary duties owed to Plaintiff Hill by failing to effectively train all members of its workforce on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5).

91. Prisma breached its fiduciary duties to Plaintiff Hill by otherwise failing to safeguard her Private Information.

92. As a direct and proximate result Prisma's breaches of its fiduciary duties, Plaintiff Hill have suffered and will suffer injury, including but not limited to: (i) the continued risk to their Private Information, which remains in Prisma's possession and is subject to further unauthorized disclosures so long as Prisma fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

93. As a direct and proximate result of Prisma's breaches of its fiduciary duties, Plaintiff Hill have suffered aggravated anxiety; emotional distress, embarrassment, humiliation and loss of privacy.

## COUNT VI (WRONGFUL INTRUSION INTO PRIVATE AFFAIRS/INVASION OF PRIVACY)

94. Plaintiff Hill incorporates by reference the factual and general allegations contained in the preceding paragraphs of this Complaint.

95. The State of South Carolina recognizes the tort of wrongful intrusion, and the South Carolina Supreme Court has indicated that it consists of a "wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *O'Shea v. Lesser*, 416 S.E.2d 629, 633 (S.C. 1992) (quoting Meetze v. The Associated Press, 95 S.E.2d 606 (S.C. 1956)).

96. Plaintiff Hill had a reasonable expectation of privacy, and freedom from exposure, in the Private Information Prisma mishandled.

97. Prisma's conduct as alleged above intruded upon Plaintiff Hill's private aspects under common law.

98. Prisma's intrusion was substantial and unreasonable enough to be legally cognizable, in that the reasonable expectation of persons of normal and ordinary sensibilities, including Plaintiff Hill, is that her Private

Information disclosed to the providers, including relevant affiliates of her medical care will be securely and confidentially kept.

99. By intentionally failing to keep Plaintiff Hill's Private Information safe, and by intentionally misusing and or disclosing said information to unauthorized parties for unauthorized use, Prisma intentionally invaded Plaintiff Hill's privacy by:

- Intentionally and substantially intruding into Plaintiff Hill's private affairs in a manner that identifies her and that would be highly offensive and objectionable to an ordinary person; and
- Intentionally publicizing private facts about Plaintiff Hill, which is highly offensive and objectionable to an ordinary person; and
- Intentionally causing anguish or suffering to Plaintiff Hill.

100. Prisma knew that an ordinary person in Plaintiff Hill's position would consider Prisma's intentional actions highly offensive and objectionable.

101. Prisma invaded Plaintiff Hill's right to privacy and intruded into her private affairs by intentionally misusing and/or disclosing her Private Information without Plaintiff Hill's informed, voluntary, affirmative, and clear consent.

102. As a proximate result of such intentional misuse and disclosures, Plaintiff Hill's reasonable expectations of privacy in her Private Information was unduly frustrated and thwarted. Prisma's conduct amounted to a substantial and serious invasion of Plaintiff's protected privacy interests causing anguish and suffering such that an ordinary person would consider Prisma's intentional actions or inaction highly offensive and objectionable.

103. In failing to protect Plaintiff Hill's Private Information, and in intentionally misusing and or disclosing her Private Information, Prisma acted with intentional malice and oppression and in conscious disregard of Plaintiff's right to have such information kept confidential and private. Plaintiff, therefore, seek an award of damages.

## COUNT VII (NEGLIGENCE)

104. Plaintiff Hill incorporates by reference the factual and general allegations contained in the preceding paragraphs of this Complaint.

105. In 1977, Congress passed the FDCPA, 15 U.S.C. §§1692-1692p, which became effective on March 20, 1978, and has been in force since that date. Section 814 of the FDCPA, 15 U.S.C. § 1692l, authorizes the Commission to use all of its functions and powers under the FTC Act, to enforce compliance with the FDCPA by any debt collector, irrespective of whether that debt collector is engaged in commerce or meets any other jurisdictional tests set by the FTC Act. The authority of the Commission in this regard includes the power to enforce the provisions of the FDCPA in the same manner as if the violations of the FDCPA were violations of a Federal Trade Commission trade regulation rule.

106. 12 CFR Part 1006.30 (Regulation F)—Other prohibited practices states the following:

   (a) Required actions prior to furnishing information.

   (1) In general. Except as provided in paragraph (a)(2) of this section, a debt collector must not furnish to a consumer reporting agency, as defined in section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f)), information about a debt before the debt collector:

   (i) Speaks to the consumer about the debt in person or by telephone; or

   (ii) Places a letter in the mail or sends an electronic message to the consumer about the debt and waits a reasonable period of time to receive a notice of undeliverability. During the reasonable period, the debt collector must permit receipt of, and monitor for, notifications of undeliverability from communications providers. If the debt collector receives such a notification during the reasonable period, the debt collector must not furnish information about the debt to a consumer reporting agency until the debt collector otherwise satisfies paragraph (a)(1) of this section.

107. Rev knew or should have known that violation of such said regulation stated above would result in harming Plaintiff Hill, constitutes as negligence.

108. Rev failed to properly notify Plaintiff Hill of the alleged debt in which she made them aware (in writing) how shocked she was (and still is) to learn they have reported alleged debt on her credit profile(s) without notice. Rev's conduct was malicious or willful in furnishing alleged debt to the crediting reporting agency or agencies.

109. Rev willfully hired, retained, or supervised incompetent employees or agents, who are allowed or encouraged to violate the law hereby caused Plaintiff Hill to suffer damages detailed herein.

110. Each instance within five (5) years preceding the filing of this Complaint, in which Defendants failed to comply with the FDCPA in one or more of the ways described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

111. Rev violated the FDCPA as described above, with actual knowledge or knowledge fairly implied on the basis of objective circumstances, as set forth in Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

112. Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), Section 8~4(a) of the FDCPA, 15 U.S.C. § 1692/(a), and Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, authorizes the Court to award monetary civil penalties of not more than $11,000 for each violation of the FDCPA before February 10, 2009, and not more than $16,000 for each violation of the FDCPA after that date.

## THIS COURT'S POWER TO GRANT RELIEF

113. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray for the following relief:

A. Grant Plaintiff's demand for trial by jury;

B. Enter judgement against Defendant and Third Party Defendant in favor of Plaintiff for each law violation alleged in this complaint;

C. Award Plaintiff monetary civil penalties against Defendant and Third Party Defendant for every violation of alleged in this complaint;

D. Award Plaintiff monetary civil penalties for each violation of the FDCPA occurring within five (5) years preceding the filing of this complaint against Third Party Defendant.

E. Award Plaintiff pre- and post-judgement interest;

F. Award Plaintiff costs and reasonable attorney's fees pursuant 42 U.S.C. § 1988;

G. Award Plaintiff such other and additional relief, including disgorgement, as the Court may determine to be just and proper; and

H. Enter permanent injunction to prevent future violations of each violation alleged in this complaint.

Dated this 9th day of May, 2022.

                                            Respectfully submitted,

                                            Dominique Hill
                                            Post Office Box 25306
                                            Columbia, South Carolina 29224
                                            Pro Se Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing complaint was hand-delivered to the Clerk's Office and mailed via USPS certified mail this 9th day of May 2022, to the following:



CT Corporation System
2 Office Park Court STE 103, ~~Columbia~~, South Carolina 29223
Registered Agent of Prisma Health

Corporate Service Company
508 Meeting Street, West Columbia 29169
Registered Agent of REVMD PARTNERS LLC

Dominique Hill
Post Office Box 25306
Columbia, South Carolina 29224
Pro Se Plaintiff